No. 11-1610 – Smith v. Apex Pipeline Services, Inc.

**FILED**

April 4, 2013
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Workman, Justice, concurring, in part, and dissenting, in part:

I concur in the majority's conclusion that petitioner failed to establish a *prima facie* showing on each of the five statutory elements contained in W. Va. Code § 23-4-2(d)(iii)(B) and therefore, the circuit court did not err in granting summary judgment to respondent as to that claim. However, I disagree with the majority's decision to affirm the circuit court's grant of summary judgment to respondent on the workers' compensation discrimination claim. Specifically, I believe that the record reveals a genuine issue of material fact which required resolution by the finder of fact.

The record before us reveals that in May 2009, petitioner contacted Bob Keaton, job superintendent and vice president of respondent, to inquire about the availability of work. Mr. Keaton advised petitioner that there was no work available since the project had ended; Mr. Keaton subsequently testified in this matter that he had "sent back" other workers to the union hall as well for the same reason. Petitioner then filed for unemployment compensation. A "Request for Separation Information" form was forwarded by Workforce West Virginia, Unemployment Compensation Division (hereinafter "Unemployment Compensation") to respondent for completion. A secretary, Pamela Perry (now Moss), completed the form on May 21, 2009. The form contained both pre-printed questions and certain limited information input by the Unemployment

1

Compensation Division based on information provided by petitioner. The form sent to respondent stated that "The claimant stated this employment was from 09/01/2008 to 09/30/2008 and that separation was due to: LACK OF WORK."[1] The form then asks the employer to provide information about the separation from employment.

Two critical questions which give rise to the workers' compensation discrimination claim at issue herein appear on this form. First, in response to "[d]o you have work for the claimant at this time?" Ms. Moss marked "yes." This is directly contrary to the primary defense of respondent, which is that Smith was not rehired because there was no work. The form then requests the reason for the claimant's separation and provides the following options to be checked by the respondent: "lack of work," "quit," or "discharge." Ms. Moss marked "discharge" and in response to the follow up query requesting a description of the "last incident that led to the discharge" she hand-wrote: "INJURED ON JOB WORKERS COMP. INJURY – SETTLEMENT GRANTED 4/22/09." This is, again, directly contrary to respondent's defense that petitioner was not, in fact, discharged, but rather respondent simply had no work for him. More importantly, this statement on its face quite clearly establishes, at a minimum, a *prima facie* case of workers' compensation discrimination pursuant to W. Va. Code § 23-5A-1.

---

[1] The next line of the pre-printed form, complete with information filled in by Unemployment Compensation as provided by the claimant, is partially cut off but appears to indicate that Smith also advised he was injured on the job: "--RT ON THE JOB"

The majority summarily dispenses with these statements by referring to Ms. Moss' testimony that she simply "checked the wrong box" and "made an error," which she then corrected by way of explanation to Unemployment Compensation. The majority, however, overlooks Ms. Moss' additional testimony that she, even at that stage of the litigation, did not know what box she should have checked, despite the plain existence of a "lack of work" box. She further testified in regard to petitioner's separation from employment, indicating that "it was a Workers' Compensation issue." Critically, respondent offered no testimony or evidence to rebut Ms. Moss' notation on the form that there was, in fact, work available, other than to simply deny that was the case. Finally, even on its face, Ms. Moss' testimony that she "checked the wrong box" raises obvious questions given that she not only checked the "discharge" box in lieu of the "lack of work" box, but affirmatively provided additional information stating that the "last incident that *led to the discharge*" was that petitioner was "injured on job." (Emphasis added). As such, the majority's characterization of the highly incriminatory statements by the employer on the form as a "clerical error," appears to be a somewhat startling white-washing of the evidence.

However, by no means do I suggest that Ms. Moss' testimony is not genuine; rather, I make no suggestion at all in that regard inasmuch as it is the duty of the fact-finder to resolve such issues. I note merely that the document and her testimony suffice only to create a genuine issue of material fact, which required a jury's assessment of credibility. A jury may have well found that the evidence that other workers were

3

"sent back" to the union hall sufficiently rebutted the curious responses contained on the Unemployment Compensation form; however, the balancing of that evidence rested squarely within the jury's province.

This Court has long held that "[t]he question to be decided on a motion for summary judgment is whether there is a genuine issue of fact and *not how that issue should be determined*." Syl. Pt. 5, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963) (emphasis added). Moreover, "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. Pt. 3, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Likewise, it is certainly not the function of this Court to similarly weigh evidence and make credibility determinations, concluding that a witness' explanation of damning evidence is sufficient to render it immaterial. Although surely not its intent, the majority opinion improvidently suggests that documentary evidence is insufficient to create an issue of fact where it is "explained away" by the party it damages.

Accordingly, I respectfully dissent.

4